IN THE DISTRICT COURT OF THE UNITED STATES

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | **CRIMINAL NO.: 2:16-378** |
| v. | * | |
| **MICHAEL SLAGER** | * | |
| | * * * | |

**GOVERNMENT'S OMNIBUS RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE**

On March 15, 2017, the defense filed eleven motions *in limine* relating to potential evidentiary issues that may arise in the upcoming federal trial. This omnibus response addresses each of the motions filed by the defense.

### I.     MOTION TO PROHIBIT REFERENCE TO TRUTHFULNESS

On March 15, 2017, the defendant moved *in limine* to preclude the United States from improperly vouching for the credibility of government witnesses. ECF No. 82.  The United States understands its responsibilities and obligations pursuant to the Code of Professional Responsibility, and is aware of the limitations on improper argument, as established by binding case law.  The government does not intend to improperly vouch for the credibility of any witnesses.  *See United States v. Sullivan*, 455 F.3d 248, 259 (4th Cir. 2006), quoting *United States v. Sanchez*, 118 F.3d 192, 198 (4th Cir.1997) ("Vouching occurs when the prosecutor indicates a personal belief in the credibility or honesty of a witness; bolstering is an implication

1

by the government that the testimony of a witness is corroborated by evidence known to the government but not known to the jury.").

However, the government does intend to argue during closing arguments – consistently with this Court's jury instructions on credibility – why the jury should accept the testimony of certain witnesses, and reject the testimony of other witnesses. *See* Eric Wm. Ruschky, *Pattern Jury Instructions for Federal Criminal Cases, District of South Carolina,* § VII.H. Final Instructions, Witness Credibility, (Emily Deck Harrill, ed., 2015 Online Edition) ("South Carolina Pattern Instructions."); *United States v. Lancaster*, 78 F.3d 888, 895 (4th Cir. 1996), vacated on other grounds, 96 F.3d 734 (4th Cir. 1996) (*en banc*). Such argument regarding credibility is appropriate during closing arguments.

## II.     MOTION IN LIMINE REGARDING USE OF THE TERM HOMICIDE

On March 15, 2017, the defendant asked the court preclude the government from using the term "homicide" unless the Court gives a contemporaneous prophylactic jury instruction. ECF No. 83. The government anticipates that Dr. Marie Lee Tormos, the forensic pathologist who performed the autopsy of Walter Scott, will testify that the she classified the death of Walter Scott as a homicide. As will be made clear during her testimony, a medical examiner must classify the means that caused the death as either natural, accident, homicide, suicide, or undetermined. S.C. Code Ann. § 17-5-530(B) (2012); S.C. Code Ann. § 17-5-5(9) (1976). Homicide simply means that an individual "died by the act, procurement, or omission of another, without regard to criminality of the killing or the culpability of the killer." *State v. Commander*, 396 S.C. 254, 265 (2011). Because this definition will be clear during the testimony of Dr. Tormos, no prophylactic instruction will be necessary. Numerous courts have found that the use of the term "homicide" in this context is proper. *Giannetti v. City of Stillwater*, No. CIV-04-926-

BA, 2006 WL 5100544, at *6–7 (W.D. Okla. Jan. 26, 2006); *United States v. Gray*, No. 3:09CR182, 2010 WL 3515599, at *5 (N.D. Ohio Sept. 3, 2010), *order clarified on reconsideration*, No. 309CR182, 2010 WL 3910070 (N.D. Ohio Oct. 5, 2010); *State v. Commander*, 396 S.C. 254, 268–69, 721 S.E.2d 413, 420–21 (2011).

### III. MOTION IN LIMINE TO PROHIBIT REFERENCE TO SUFFERING OF WALTER SCOTT OR HIS FAMILY

On March 15, 2017, the defense moved this Court to prohibit testimony regarding the suffering of Walter Scott or his family, whether physical, mental, employment, financial or other suffering. ECF No. 84. The government does not intend to introduce evidence of general suffering of Walter Scott's family. However, the government does anticipate providing testimony from at least one of Walter Scott's family members who was on the phone with him during portions of his interaction with the defendant. Judy Scott will testify that, during the incident, she was on the phone with her son, Walter. Judy Scott will testify that she was able to hear multiple electrical sounds, and that she heard Walter Scott react by screaming in pain. This testimony is relevant, as it demonstrates that the defendant was in control of Walter Scott and that the defendant used his Taser in drive stun mode during that portion of their contact.

Furthermore, this testimony offers information that the Taser logs cannot provide. While the Taser logs can account for the number of times and the length of time a Taser was deployed, the logs cannot show: whether a Taser was used in drive stun or in probe mode; whether the Taser was effective; or who operated the Taser. By testifying about the screaming she heard in connection with electrical noises, Ms. Scott will offer evidence that Mr. Scott was drive stunned by the defendant, and that the Taser had an effect on him. Furthermore, this evidence will corroborate the testimony of eyewitness Feidin Santana, who will testify that the defendant used

3

an electrical device on Mr. Scott, and that it appeared to him that Mr. Scott was trying to avoid the Taser. This testimony from Santana and Ms. Scott is offered not to prove generally that Walter Scott suffered during his interaction with the defendant, but rather to specifically prove the government's case, most notably the offense charged under section 242. As such, the defendant's motion to exclude all evidence of Walter Scott's suffering should be denied.

## IV.     MOTION IN LIMINE REGARDING MENTAL STATE TESTIMONY

The defendant moved to prevent the United States or any of the United States' witnesses from voicing their opinions on whether Michael Slager had the mental state or condition that constitutes an element of the crime charged. ECF No. 85.

The United States does not intend to have witnesses opine on the defendant's mental state.[1] However, the government intends to argue during closing argument that the evidence firmly establishes that the defendant had the requisite intent for each of the charged crimes. The government will make such argument consistent with this Court's jury instructions and the relevant case law. *See* South Carolina Pattern Instructions, § VII.A (Admissions By Defendant/Credibility); VII.I (Defendant's Testimony); VII.F (Consciousness of Guilt).

## V.     MOTION IN LIMINE TO EXCLUDE IRRELEVANT OR PREJUDICIAL EVIDENCE

On March 15, 2017, the defendant moved to prohibit the government and its witnesses from "alluding to, referring to, or in any way bringing before the jury" any testimony or evidence that is either irrelevant or unfairly prejudicial. ECF No. 86. The defense motion does not

---

[1] As noted in the Government's motion to exclude memory evidence, ECF No. 58, the defendant also is barred from presenting testimony that opines on the defendant's mental state regarding the charged crimes. The government renews its objections to such testimony at this time.

4

specify what evidence or testimony it seeks to exclude, other than a vague reference to "allegations of past crimes charged or inappropriate or criminal behavior." *Id*.

It is unclear what evidence the defendant seeks to exclude. To the extent that the defendant is referring to his pending murder charge in state court, the government does not intend to refer to such charges during the trial. To prevent reference to the prior state murder trial, the government would propose that any use of transcripts from the prior state trial be referred to as "prior proceedings" on the applicable date.

To the extent that the defendant is referring to other evidence, the government would request the defendant to be more specific in its motion.

### VI.    MOTION IN LIMINE TO PROHIBIT PROSECUTOR FROM ANTICIPATING DEFENSE POSITION

On March 15, 2017, the defendant filed a motion requesting this Court to prevent the government from anticipating and arguing against the anticipated defense position in its opening statement. ECF No. 87. The defendant does not identify the specific defenses the government should be precluded from referencing in its opening statement.

The government intends to give an opening statement that outlines the evidence that the government reasonably believes in good faith will be admitted during the trial. *See United States v.Dinitz*, 424 U.S. 600 (1976) (noting that the purpose of an opening statement is "to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole."); *United States v. Brockington*, 849 F.2d 872, 875 (4th Cir. 1988) (reversed on other grounds), quoting *United States v. Wright-Barker*, 784 F.2d 161, 175 (3d Cir.1986) (opening statements should be "an objective summary of the evidence reasonably expected to be produced."); ABA Standards for Criminal Justice 3-5.5 (4th

ed. 2015) (opening statements "should be confined to...the evidence the prosecutor intends to offer which the prosecutor believes in good faith will be available and admissible.")

In the instant matter, the government intends to introduce at trial the defendant's statements about the shooting of Walter Scott, both those he made to other North Charleston Police Department officers immediately following the shooting, and those he made three days later to agents from the South Carolina Law Enforcement Division (SLED). Additionally, the government may introduce portions of the defendant's prior testimony during his state murder trial. All of the defendant's prior statements are admissible in his federal trial pursuant to Federal Rule of Evidence 801(d)(2). *Harrison v. United States*, 392 U.S. 219, 222 (1968) ("[W]e . . . do not question the general evidentiary rule that a defendant's testimony at a former trial is admissible in evidence against him in later proceedings."). During opening statements, the government intends to discuss prior statements made by the defendant, as well as the evidence that demonstrates that such statements were false. This is well within the bounds of a proper opening statement.

### VII. MOTION IN LIMINE REGARDING PRIVILEGED TESTIMONY

On March 15, 2017, the defendant moved *in limine* to preclude the government from "mentioning, referring to, or otherwise alluding to any communication between Slager or any communications by his attorney's or agents of his attorney." ECF No. 88. It is unclear from the defendant's motion what precisely the defendant seeks to exclude. The government understands the laws and rules related to attorney-client privilege and does not intend to ask questions that infringe on that privilege.

The government intends to elicit non-privileged testimony of Levi Miles, a defense investigator who worked for the defendant's first attorney, David Aylor. Miles was present

during Slager's interview with agents from the South Carolina Law Enforcement Division.[2] Because the statement was given in the presence of third parties – namely, agents of SLED – the communication was not privileged. *In re Grand Jury Proceedings*, 727 F.2d 1352, 1358 (4th Cir. 1984) (holding that a conversation made in the presence of third parties was clearly not intended to be confidential); *United States v. Jones*, 696 F.2d 1069 (4th Cir. 1982) (noting that the "essence" of the attorney-client privilege is that the communication was intended to be confidential). The testimony from Mr. Miles will only relate to the voluntary interview that the defendant gave to SLED agents after he received *Miranda* warnings and was told that the information could be used against him in Court. This conversation between the defendant, SLED, and Miles was clearly not protected by attorney-client privilege.

### VIII. MOTION IN LIMINE REGARDING THE SILENCE OF THE DEFENDANT

The defendant moved this Court to order the United States and its witnesses "not to allude to, refer to, or in any way bring before the jury the silence of Slager in the State's case." ECF No. 89 (emphasis added).

The government is somewhat confused by the motion, as the defendant did not exercise his right to remain silent during the State trial. To the contrary, the defendant testified in that case, and his testimony in that case is admissible in the Federal case, as noted above. *See* Fed.R.Evid. 801(d)(2); *Harrison v. United States*, 392 U.S. 219, 222 (1968) ("[W]e . . . do not question the general evidentiary rule that a defendant's testimony at a former trial is admissible

---

[2] The circumstances surrounding this interview have been sufficiently developed by the parties in previous motions. *See* ECF No. 54; ECF No. 69.

in evidence against him in later proceedings."). The government may seek to introduce portions of the defendant's testimony during the government's case in chief.

To the extent that the defendant's motion seeks to preclude the United States and its witnesses from mentioning the defendant's silence in the <u>federal case</u>, the United States is aware of its obligations pursuant to *Jenkins v. Anderson*, 447 U.S. 231 (1980), *Doyle v. Ohio*, 426 U.S. 610 (1976), and their progeny.

### IX.     MOTION IN LIMINE REGARDING ESTATE OF WALTER SCOTT CIVIL SETTLEMENT

The defendant moved this Court to prohibit the United States or its witnesses from mentioning that the City of North Charleston settled a claim with the Estate of Walter Scott for $6.5 Million. ECF No. 90. The government does not intend to introduce such evidence in this trial. Likewise, the defendant should also be barred from introducing such evidence.

### X.     MOTION IN LIMINE REGARDING CPR AND TASER RETRIEVAL

The defendant filed a motion *in limine* to exclude reference to the fact that the defendant did not provide CPR to Walter Scott following the shooting, and to exclude any mention that the defendant "attempted to 'plant' the Taser on Scott" after the shooting. EFC No. 91.

Both facts are clearly relevant, probative, and not unfairly prejudicial. Following the shooting, the defendant spoke with multiple supervisors on the scene. The defendant claimed to at least one supervisor, that following the shooting, he provided medical care to Walter Scott. The video evidence clearly contradicts the defendant's claim. The defendant's false claim that he provided medical care constitutes evidence of his consciousness of guilt. It also is evidence that the defendant tried to cover up the fact that he acted contrary to his training and his department's policies.

The defendant's actions with respect to his Taser are also relevant, probative, and not unfairly prejudicial. After shooting Walter Scott, the defendant handcuffed him. The defendant immediately jogged back to where the Taser was on the ground, picked up the Taser, came back to Walter Scott's lifeless body, and casually tossed the Taser on the ground, closer to Scott. Ultimately, the defendant picked up the Taser and reholstered it. In his interview with SLED, the defendant falsely asserted that he picked up the Taser from an area in between where Slager had struggled with Scott and where Scott ultimately fell. The defendant failed to acknowledge that at any point he dropped the Taser next to Scott's body. In his state trial, the defendant claimed that he had no recollection of dropping the Taser next to Scott.

The defendant's false statements about providing medical care to Walter Scott, the retrieving and planting the Taser, and the false statements regarding the Taser, provide strong circumstantial evidence of the defendant's consciousness of guilt. *See United States v. Billups*, 692 F.2d 320, 329-30 (4th Cir. 1982) (approving jury instruction on consciousness of guilt); South Carolina Pattern Instructions, VII.F (Consciousness of Guilt) ("You may consider evidence that the defendant did, or attempted to, fabricate or suppress evidence, as showing consciousness of guilt."); *United States v. Young*, 248 F.3d 260, 273 (4th Cir. 2001) (a defendant's pattern of false explanations and fabrication of evidence may be considered by a jury in determining guilt.) Accordingly, both the failure to provide medical treatment and the planting of the Taser are relevant and admissible evidence.

### XI.   MOTION TO EXCLUDE PREJUDICIAL TERMS

On March 15, 2017, the defendant asked the Court to prohibit the United States and its witnesses from referring to Mr. Scott as the "victim" and Mr. Slager as the "defendant" at trial. ECF No. 92.  The defendant also requests that these terms not be used in the jury charges.

"No clearly established law holds that a prosecutor or a witness cannot call an alleged victim a victim." *Dillard v. Glebe*, No. C14-5026 RJB, 2014 WL 1910001, at *9 (W.D. Wash. May 12, 2014); *see also United States v. Gibson*, 690 F.2d 697, 703 (9th Cir. 1982) (because the victim suffered losses, "the prosecutor's use of the word 'victim' was fair comment on the evidence") (citing *United States v. Martinez*, 616 F.2d 185, 187 (5th Cir. 1980)); *United States v. Spensley*, No. 09-CV-20082, 2011 WL 165835, at *1–2 (C.D. Ill. Jan. 19, 2011) ("The jury will not be unfairly inflamed or prejudiced against Defendant if [the complaining witness] is referred to as a victim.").  Reference to Mr. Scott as a "victim" is an appropriate identification marker as the individual who suffered loss in this case, i.e. was shot to death, and may be used as an appropriate comment on the evidence in opening and closing.

Additionally, a number of federal Courts of Appeal have held that "the use of the word 'victim' in the jury instructions is not prejudicial to a defendant's rights when the instructions taken as a whole clarify the government's burden of proving all elements of the crime." *United States v. Washburn*, 444 F.3d 1007, 1013 (8th Cir.2006). *See also Server v. Mizell*, 902 F.2d 611, 615 (7th Cir.1990); *United States v. Granbois*, 119 Fed.Appx. 35, 38–39 (9th Cir.2004) (unpublished mem. decision), cert. denied, 543 U.S. 1014, 125 S.Ct. 640, 160 L.Ed.2d 482 (2004).

The defendant fails to cite any case law in support of the argument that use of the term "defendant" at trial or in jury instructions would prejudice the jury. Black's Law Dictionary

defines a criminal defendant as "[s]omeone who is accused in a criminal proceeding." 10th ed. 2014. The term carries with it no presumption of guilt and thus, referring to Mr. Slager as such would create no meaningful risk of prejudice or improper influence on the jury.

## XII. CONCLUSION

For the foregoing reasons, the United States respectfully submits this Omnibus Response to the Defendant's Motions *in Limine*.

BETH DRAKE
UNITED STATES ATTORNEY

By: *s/ Eric Klumb*
Eric Klumb (#01671)
Assistant United States Attorney
151 Meeting Street, Suite 200
Charleston, South Carolina 29401-2238
Telephone: 843-266-1678
Email: eric.klumb@usdoj.gov

*s/ Jared Fishman*
JARED FISHMAN
Special Litigation Counsel
Civil Rights Division, Criminal Section
U.S. Department of Justice
601 D Street, NW, 5th Floor
Washington, DC 20530
Telephone: (202) 598-1877
Jared.Fishman2@usdoj.gov
Maryland Bar No. 04-1214-0250